IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARTURO GARCIA and AURORA | § | |
| GONZALEZ de GARCIA, | § | |
| Individually, and as heirs of | § | |
| RODOLFO GONZALEZ GARCIA, | § | |
| DECEASED, and the ESTATE OF | § | |
| RODOLFO GARCIA GONZALEZ, | § | |
| DECEASED, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-721 |
| | § | |
| ZACHARY LONG, HARRIS COUNTY, | § | |
| TEXAS, and CENTEX HOMES | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending are Defendant Centex Homes's Traditional Motion for Take-Nothing Summary Judgment (Document No. 47) and Supplemental Motion for Take-Nothing Summary Judgment (Document No. 48), Defendants Zachary Long and Harris County's Motion for Summary Judgment (Document No. 49), and Plaintiffs Arturo Garcia and Aurora Gonzalez de Garcia's Objections to, and Motion to Strike, Defendant Centex Homes's Summary Judgment Evidence (Document No. 50).[1] After

---

[1] Plaintiffs also move to correct the name of Defendant Centex Homes from "Centex Homes, Inc., a Texas Corporation," to "Centex Homes, a Nevada General Partnership." (Document No. 50). This motion is GRANTED. Plaintiffs' general and non-particularized one-sentence Motion to Strike Centex Homes's Summary Judgment Evidence (Document No. 50) is DENIED.

carefully considering the motions, responses, replies, surreply, and the applicable law, the Court concludes as follows:

## I.  Background

This is a civil rights case brought by Plaintiffs Arturo Garcia and Aurora Gonzalez de Garcia ("Plaintiffs"), who state that they were the parents of Rodolfo Gonzalez Garcia ("Garcia"). Plaintiffs allege that Garcia's constitutional rights were violated when he was shot and killed by Harris County Deputy Sheriff Zachary Long ("Long") when Long was providing nighttime security for Centex Homes ("Centex") at a new-home construction site in Harris County, Texas ("the County").  Garcia was shot and killed after Long allegedly observed him loading Centex's roofing shingles into a van at 2 A.M. on February 1, 2004.

With approval from the County, Deputy Long worked an extra job for Centex Homes at residential construction sites, where he was hired to prevent the theft of building materials. *See* Document No. 49 ex. 1 at 1.  On February 1, 2004, Long received a phone call from Michael Missler ("Missler"), a Centex lead field manager, who requested that Long work that night because Centex had been experiencing thefts of its building and roofing materials at a new home under construction.  Centex stored its roofing supplies in the new home's front yard, and Centex planned to install the shingles on the home the following week.  Missler asked Long to conduct his

surveillance from an upstairs room in a house across the street from the new home.  Id.  Long did so.  When Long arrived at the job site shortly before 2 A.M., he was dressed in his Harris County Deputy Sheriff's uniform, was armed, and carried with him a Sheriff's Department radio.

Shortly after Long arrived, he noticed a van drive down the road and back.  Document No. 49 ex. 8 at 48.  A few minutes later, the van returned a second time and circled the cul-de-sac, then stopped directly in front of the pallet of shingles across the street.  Two windows in the upstairs room were open, which enabled Long to hear noises from the street, but the van blocked his view of the shingles.  Long never saw anyone get out of the van, but he could hear that the van's engine was still running, and he began to hear noises which sounded like someone throwing something heavy into the vehicle.  Long then called Dispatch to request back-up and to report a possible theft in progress.  He told Dispatch that he did not know how many occupants were in the vehicle, and since he was working at a new subdivision not located on the County maps, he gave brief directions to the dispatcher.  Based on the dispatcher's information about the back-up unit's location, Long estimated that back-up would arrive in approximately ten to fifteen minutes.  Id. at 52.

After the call, Long moved downstairs to wait for back-up to arrive.  As he waited, he began to suspect that the van would be

loaded and gone before back-up arrived.  Deciding that he "had a duty and responsibility to prevent whatever it was that was occurring over there and to go investigate it," id. ex. 1 at 2; ex. 8 at 54, he called Dispatch again to report that he was going to exit the residence and approach the vehicle.

The parties dispute what occurred next.  According to Long, he approached the front of the van and could see through the front windshield that a person—Garcia—was standing in the van and leaning over as if he had been loading shingle bundles into the van from its side door.  Document No. 49 ex. 1 at 2.  Long states that he pointed his gun at Garcia and shouted in Spanish, "Police, hands up."  Id. ex. 8 at 60-61; Document No. 50 ex. 1-B at 71.  Garcia turned toward Long and made eye contact with him, then moved toward the driver's seat of the van without reaching for a weapon or saying anything in response to Long's commands.  Long states that he stood in front of the van during this exchange.  After Garcia got behind the wheel of the van, he began accelerating in Long's direction and maintained eye contact with Long.  Document No. 49 ex. 1 at 2.  The vehicle then hit Long "somewhere in the front right" of his body.  Document No. 50 ex. 1-B at 97.  Long states that, in fear of his life, he then purposefully discharged his weapon and fell backwards, not knowing how many times he fired his gun or which part of the vehicle his bullets struck.  Id.; Document No. 49 ex. 1 at 2; ex. 8 at 96.

4

The van continued moving down the street, and Long stood up to chase the van, then fell again.  Document No. 49 ex. 1 at 2.  The van traveled about a block before it crashed into a house.  Long then called Dispatch to report that he had fired shots.  According to eyewitnesses who came to the scene after hearing the crash, Long's leg was bleeding and he walked with a limp.  Id. exs. 4 at 1-2; 5 at 1-2.  When the ambulance arrived, Garcia was slumped over in the front seat, dead.  The official offense report prepared by the County Sheriff's Department states that Garcia was shot when he struck an off-duty deputy while fleeing the scene of a theft.  Document No. 49 ex. 2.

Plaintiffs dispute Long's assertion that he stood in the vehicle's path when Garcia fled the scene.  Instead, Plaintiffs submit that Long stood on the left side of the van when he discharged his weapon.  Plaintiffs' police practices expert Roger Clark ("Clark") opines in his report:

> The initial physical evidence clearly contradicted [Long's] claim, and subsequent physical examinations (such as my personal reconstruction of the van's windshield), and the autopsy of Mr. Garcia's body have established beyond doubt where Deputy Long actually was when he fired his gun at Mr. Garcia.  These facts speak to the reality that Deputy Long could not have a reasonable fear of being run over by Mr. Garcia since he was not in the path of the van as it drove away.

5

Document No. 35 ex. 2 at 5.[2]   Plaintiffs contend that these inconsistencies create fact issues that preclude summary judgment.

Plaintiffs allege that Deputy Long violated Garcia's constitutional right to be free from the use of excessive force, and contend that Harris County is liable for Long's actions. Plaintiffs also bring a state-law assault and battery claim against Long under the Texas survival and wrongful death statutes, and an intentional infliction of emotional distress claim against all Defendants. Further, Plaintiffs allege that Centex Homes was negligent in improperly training Long and should be liable for his actions under theories of *respondeat superior*. Plaintiffs seek wrongful death damages, and Garcia's alleged Estate seeks survivor

---

[2] Clark's report is dated February 14, 2005. Seven months later, and almost two months after the close of discovery, Clark executed an affidavit, attached to Plaintiffs' response to Centex's Motion for Summary Judgment, which introduces new theories of legal liability and novel allegations of a "sting" operation not alleged in Plaintiffs' Amended Complaint or in Clark's first report. To the extent it presents new theories and allegations, it goes beyond what is allowed as a *supplement* to the report of February 14, 2005. *See* Fed. R. Civ. P. 26(e). Those new theories and opinions should have been submitted no later than February 14, 2005, in accordance with the Scheduling Order. (Document No. 23). *See* Fed. R. Civ. P. 16(b) ("A schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge"). Plaintiffs have not requested leave to file this report, nor have they shown good cause for why the Scheduling Order should be further modified. *See also* Fed. R. Civ. P. 37(c)(1) (party must show substantial justification for late disclosure and show why the failure to comply with Rule 26 is harmless). Centex's objection to Clark's affidavit dated September 20, 2005, is therefore SUSTAINED.

6

damages.[3]  Long, Harris County, and Centex Homes have filed motions for summary judgment seeking dismissal of all of Plaintiffs' claims.

## II.   Standard of Review: Summary Judgment

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

---

[3] Plaintiffs concede that Arturo Garcia never submitted an application for administration of his son's Estate, see Document No. 57 at 94.  They claim that Auturo Garcia intended to apply for administration "during the week of October 17, [2005]," id. at 95, but still have offered no proof of any administration.  Likewise, Garcia's parents have neither alleged nor presented summary judgment evidence that an estate administration is not necessary in this case.  See Shepherd v. Ledford, 962 S.W.2d 28, 31-32 (Tex. 1998) (personal representatives of the decedent's estate are the only persons entitled to recover estate property, unless heirs at law allege and prove that there is no estate administration pending and none is necessary) (citing TEX. CIV. PRAC. & REM. CODE § 71.021(b)).  Accordingly, all claims alleged by Plaintiffs under the Texas survival statute, and claims for damages under § 1983 based upon the remedy afforded by the Texas survival statute, are DISMISSED on summary judgment for lack of standing.  Likewise, because there is no administration of an estate, all claims alleged by the putative Estate of Rodolfo Garcia Gonzalez, Deceased, against all Defendants, are DISMISSED.

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *See* id. at 2553-54. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *See* Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2514-15 (1986)). "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. *See* Anderson, 106 S. Ct. at 2513-14. All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. (citing Anderson, 106 S. Ct. at 2511). Even if the standards of Rule 56 are met, a court has discretion to deny a motion for

summary judgment if it believes that "the better course would be to proceed to a full trial." <u>Anderson</u>, 106 S. Ct. at 2513.

## III. <u>Discussion</u>

### A.   <u>Deputy Long's Motion for Summary Judgment</u>

Plaintiffs allege that Deputy Long's use of deadly force against Garcia deprived him of rights secured by the Fourth Amendment. Deputy Long moves for summary judgment, arguing he is entitled to qualified immunity as to that claim. "Qualified immunity protects government officials who perform discretionary functions from liability 'unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Glenn v. City of Tyler</u>, 242 F.3d 307, 312 (5th Cir. 2001) (quoting <u>Gibson v. Rich</u>, 44 F.3d 274, 276 (5th Cir. 1995)). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." <u>McClendon v. City of Columbia</u>, 305 F.3d 314, 323 (5th Cir. 2002) (en banc), *cert. denied*, 123 S. Ct. 1355 (2003). A dual analysis is applied to qualified immunity defenses. First, a court must ask whether the plaintiff has alleged the violation of a constitutional right. <u>Brosseau v. Haugen</u>, 125 S. Ct. 596, 598 (2004). If the plaintiff has done so, the court must determine whether the defendant's conduct was "objectively reasonable in light of clearly established law at the

9

time that the challenged conduct occurred." <u>Glenn</u>, 242 F.3d at 312. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Brosseau</u>, 125 S. Ct. at 599. "If, upon viewing the evidence in the light most favorable to the [plaintiff], reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity.'" <u>Haggerty v. Texas Southern Univ.</u>, 391 F.3d 653, 655 (5th Cir. 2004) (quoting <u>Southard v. Tex. Bd. of Criminal Justice</u>, 114 F.3d 539, 550 (5th Cir. 1997) (internal quotations omitted)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>Babb v. Dorman</u>, 33 F.3d 472, 477 (5th Cir. 1994) (quoting <u>Malley v. Briggs</u>, 106 S. Ct. 1092, 1096 (1986)).

1.   <u>Excessive Force Claim</u>

Plaintiffs allege that Deputy Long violated Garcia's constitutional right to be free from excessive force, and Long contends that he acted in self defense to prevent being run over. At issue is whether Long's conduct was objectively unreasonable. *See* <u>Tarver v. City of Edna</u>, 410 F.3d 745, 751 (5th Cir. 2005). Central to this question is whether Long was standing in the path of the oncoming vehicle when he shot Garcia. The autopsy report

10

and Plaintiffs' expert's reconstruction of the van's windshield provide some evidence, according to Plaintiffs' expert, that Long stood to the vehicle's side, not in the vehicle's path, when he discharged his weapon. *See* Document No. 35 ex. 2 at 5. Defense expert Mike Faas does not dispute that the bullets entered Garcia's side. The Fifth Circuit has noted that granting summary judgment to the defense in a deadly force case should be made with particular care when the officer defendant is the sole surviving witness to the central events that occurred. <u>Bazan v. Hidalgo County</u>, 246 F.3d 481, 493 (5th Cir. 2001).

Viewing the evidence in the light most favorable to Plaintiffs, there is a genuine issue of material fact as to whether Long was in the path of Garcia's accelerating van when he used deadly force. The Court is therefore precluded from holding as a matter of law that Long in shooting Garcia acted in an objectively reasonable manner in light of clearly established law. This same fact issue also precludes summary judgment with respect to Plaintiffs' state-law assault and battery claim against Deputy Long under the Texas wrongful death statute.

2.   <u>Proof of Damages</u>

In addition to his defense of qualified immunity, Deputy Long contends that summary judgment should be granted because Plaintiffs cannot prove the existence of damages. Section 1988 incorporates

11

Texas's wrongful death remedy into § 1983.  *See* <u>Rhyne v. Henderson County</u>, 973 F.2d 386, 391 (5th Cir. 1992).   Under the Texas wrongful death statute, TEX. CIV. PRAC. & REM. CODE § 71.004, parents are permitted to recover damages for loss of society and companionship in connection with the wrongful death of their child, whether or not pecuniary damages are shown.  *See* <u>id.</u> at 390; <u>Grandstaff v. City of Borger</u>, 767 F.2d 161, 172 (5th Cir. 1985). Although Plaintiffs have no evidence of pecuniary loss, the affidavit of Arturo Garcia is sufficient to create a fact issue that he suffered "intangible damages," <u>Roberts v. Williamson</u>, 111 S.W.3d 113, 120 (Tex. 2003), for loss of society and companionship related to his son's death.  *See* Document No. 60 ex. 7.

The unsworn declaration of Garcia's mother, Aurora Gonzalez Garcia (Document No. 60 exs. 4-6), which was executed outside the United States, is not substantially in the form required by 28 U.S.C. § 1746, and is therefore not competent summary judgment evidence.  Without summary judgment evidence to raise so much as a fact issue that Aurora Gonzalez Garcia has sustained damages of any kind as a result of Garcia's death, even intangible damages, Deputy Long is entitled to summary judgment on her claims.[4]

---

[4] Plaintiff Aurora Gonzalez de Garcia's Expedited Motion for Leave to Depose Herself (Document No. 66), not filed until December 23, 2005, is DENIED, as moot.

B.    <u>Harris County's Motion for Summary Judgment</u>

Plaintiffs claim that the Harris County Sheriff's Department has a practice and custom of improperly shooting suspects and failing to retrain, fire, or reassign deputies who, like Long, have engaged in such conduct.  A municipality can be held liable under § 1983 only when the municipality itself causes a constitutional deprivation.  *See* <u>City of Canton v. Harris</u>, 109 S. Ct. 1197, 1203 (1989); <u>Monell v. Dept. of Soc. Servs.</u>, 98 S. Ct. 2018, 2037-38 (1978).  This requires the execution of an official city policy or custom that results in the injury made the basis of the § 1983 claim.  <u>Bd. of County Comm'rs v. Brown</u>, 117 S. Ct. 1382, 1388 (1997); <u>Monell</u>, 98 S. Ct. at 2035-36.  Proof of municipal liability sufficient to satisfy <u>Monell</u> requires: (1) an official policy or custom, of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.  <u>Pineda v. City of Houston</u>, 291 F.3d 325, 328 (5th Cir. 2002).  A high standard of proof is required before a municipality can be held liable under § 1983.  *See* <u>Snyder v. Trepagnier</u>, 142 F.3d 791, 796 (5th Cir. 1998); *see also* <u>Brown</u>, 117 S. Ct. at 1394 ("Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability [inappropriately] collapses into *respondeat superior* liability"); <u>Canton</u>, 109 S. Ct. at 1208 (stating that

13

§ 1983 liability should not be imposed absent a showing of "a high degree of fault on the part of city officials" (O'Connor, J., concurring)).

For purposes of municipal liability, an official policy may be (1) a policy statement, ordinance, regulation or decision, or (2) "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted or promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992). Here, Plaintiffs do not identify or complain of any official written policy sanctioning the use of excessive force in violation of the Fourth Amendment. Rather, Plaintiffs claim two theories of liability: (1) an unwritten municipal custom of improperly shooting suspects in vehicles to prevent their escape when the suspects do not pose a threat of danger to the officer or others; and (2) inadequate re-training and discipline.

1.  Pattern of Improper Shootings

For Plaintiffs to create a triable fact issue on their allegation that Harris County has a custom of unjustified shootings, it is not enough to show a series of isolated incidents. See Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003) ("[P]roof of a custom or practice requires more than a showing of

14

isolated acts . . .”); *see also* <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 581 (5th Cir. 2001) (“Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability”) (quoting <u>Bennett v. City of Slidell</u>, 728 F.2d 762, 768 n.3 (5th Cir. 1984) (internal quotations omitted). Rather, Plaintiffs must show a “persistent and widespread practice” of improper shootings to create a fact issue regarding custom. <u>Pineda</u>, 291 F.3d at 329 (citing <u>Piotrowski</u>, 237 F.3d at 581).

Plaintiffs submit an opinion from their expert, who discusses twelve different shootings by Harris County Sheriff’s Deputies that occurred over a period of five years before Garcia’s shooting. Clark’s summary characterizations of these twelve incidents do not disclose if complaints were made against the deputies in question, if investigations were conducted, and, if so, the findings of those investigations. Representative of Clark’s conclusory summaries of the twelve incidents are the following three examples from Clark’s report:

> On August 21, 2003, Harris County deputies shot at a stolen vehicle to prevent the driver’s escape.
>
> On May 4, 2003, a Harris County Sheriff’s Deputy shot Michael Blevins during a vehicle pursuit. The deputy pulled along side Blevins and then shot him from a few feet away. The officer, methodically and purposefully, pulled even with Blevins, aimed a gun and shot.

15

On August 5, 2002, Harris County Sheriff's deputy shot Artie Rufus McDonald in the chest and arm to prevent his escape from the scene of an alleged crime.

Document No. 35 ex. 2 at 7. These conclusory characterizations of twelve separate and isolated incidents in one of the largest metropolitan counties in the United States, over a span of five years, fall far short of raising a fact issue that there is a widespread and persistent practice of improper shootings in Harris County. *See* Pineda v. City of Houston, 291 F.3d 325, 329 (5th Cir. 2002) ("Eleven incidents each ultimately offering equivocal evidence of compliance with the Fourth Amendment cannot support a pattern of illegality in one of the Nation's largest cities and police forces"), *cert. denied*, 123 S. Ct. 892 (2003); *see also* Carter v. Morris, 164 F.3d 215, 219-20 (4th Cir. 1999). Furthermore, the Fifth Circuit has cautioned that, when seeking to prove a municipality's malevolent motive, plaintiffs must introduce more evidence than merely the opinion of an expert witness. Snyder, 142 F.3d at 799; *see* Stokes v. Bullins, 844 F.2d 269, 275 (5th Cir. 1988) (disagreeing with a district court's primary reliance on the testimony of a single expert witness in finding that a municipality violated § 1983). Plaintiffs fail to raise a genuine issue of material fact that a custom of improper shootings exists in the Harris County Sheriff's Department.

2.   <u>Inadequate Discipline and Re-training</u>

Plaintiffs also allege that an unconstitutional custom can be inferred from the City's failure to discipline and retrain Long and other deputies who allegedly improperly shot at suspects.   "[A] City policy of inadequate officer discipline could be unconstitutional if it was pursued with deliberate indifference toward the constitutional rights of citizens." <u>Piotrowski</u>, 237 F.3d at 581.  There are two fundamental requirements for holding a city liable under § 1983 for inadequate training and discipline policies: culpability and causation. *See* <u>Snyder</u>, 142 F.3d at 795; *see also* <u>Piotrowski</u>, 237 F.3d at 581.  First, the municipal policy must have been adopted with "deliberate indifference" to its known or obvious consequences.   Second, the municipality must be the "moving force" behind the constitutional violation.  <u>Snyder</u>, 142 F.3d at 795.  Deliberate indifference is a very stringent standard, and a "showing of simple or even heightened negligence will not suffice" to make a city liable.  <u>Brown</u>, 117 S. Ct. at 1390.  A plaintiff should "demonstrate a pattern of violations," <u>Cousin v. Small</u>, 325 F.3d 627, 637 (5th Cir. 2003), such that the failure to retrain and discipline "reflects a 'deliberate' or 'conscious' choice to endanger constitutional rights." <u>Snyder</u>, 142 F.3d at 799; *see also* <u>Canton</u>, 109 S. Ct. at 1205 (to show deliberate indifference, a plaintiff must show that "the need for more or different training is so obvious, and the inadequacy so likely to

17

result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need").

Plaintiffs claim that the County was deliberately indifferent to Garcia's civil rights by failing to retrain or discipline Long for complaints he received before Garcia's shooting, as well as for Garcia's shooting itself. In regard to an officer's past misconduct that predates an excessive force claim, the Fifth Circuit has held:

> Prior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of *similar* violations is required. While the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired and, in the case of excessive use of force, that the *prior act have involved injury to a third party*.

Estate of Davis v. City of N. Richland Hills, 406 F.3d 375, 383 (5th Cir. 2005)(second emphasis added)(internal citations omitted). Here, Plaintiffs present evidence that Long received a letter of reprimand in 2002 for his conduct in relation to an extramarital affair and his divorce proceedings.[5]  Document No. 60 ex. 1-A. Long's ex-wife Susan Miller ("Miller") also testified at her

_____

[5] Specifically, Long was reprimanded because (1) he gained entrance to the office of his wife's lover, observed that the man had received flowers from his wife, and removed the address card for the flowers without permission; and (2) he appeared in court during his divorce proceedings in his Sheriff's uniform, which "exhibited poor judgment."  Document No. 60 ex. 1-A at 2.

deposition that she had observed a box of "throw-down" weapons and evidence in Long's patrol car, and after her divorce she found the box in a storage shed, which she reported to the Harris County Sheriff's Department unit of Internal Affairs.[6]   Document No. 50 ex. 1-D at 11-14.   (Defendants assert that the complaints against Long were fully investigated and found to be lacking in merit. Document No. 62 ¶ 10.)   Assuming the truth about Plaintiffs' contention that Long engaged in past misconduct and "perhaps illegalities," none of those incidents involved any use of "excessive force with a deadly weapon resulting in harm to a citizen in a context similar to the present case," so as to put the County on notice.   Davis, 406 F.3d at 383-84; see Roberts v. City of Shreveport, 397 F.3d 287, 294 (5th Cir. 2005) ("We do not deny that this evidence appears to reflect badly on [the subordinate's] judgment, but it provides nothing about [the subordinate's] actual use of deadly force in the much different context of this case, nor is it relevant to whether [the supervisor] was on notice that [the subordinate] might use excessive force when confronted with a speeding vehicle while standing in the street directing traffic"). In sum, Plaintiffs have presented no evidence that Long was previously known to have a propensity to use excessive force

---

[6] Miller testified that a sergeant from the Precinct 1 Constable's office later came to her house at her request to collect the box. She asked the sergeant to send her a list of what the box contained, but he never obliged "and that's the last we've heard of it." Document No. 50 ex. 1-D.

against third parties in settings comparable to that in which Garcia was shot. Moreover, to the extent that Plaintiffs allege that an unconstitutional custom can be inferred from the County's failure to discipline Long for the shooting of Garcia, the Fifth Circuit has repeatedly rejected this argument, holding that the failure to discipline on a single occasion is not sufficient to prove a custom or policy that is the moving force behind the alleged unconstitutional violation. <u>Fraire v. City of Arlington</u>, 957 F.2d 1268, 1278-79 (5th Cir. 1992).[7]

Plaintiffs also allege that Harris County failed to train its personnel on the use of deadly force and discipline officers who improperly used deadly force, thereby proximately causing the injury and death of Garcia. Plaintiffs have produced no evidence, however, that Long and other deputies received less than the minimum training required by law or that the legal minimum of

---

[7] In asserting that the Harris County Sheriff's Department ratified Long's shooting of Garcia by not disciplining or retraining Long after the incident, Plaintiffs' reliance on <u>Grandstaff v. City of Borger</u>, 767 F.2d 161 (5th Cir. 1985), is misplaced. The Fifth Circuit has cautioned that <u>Grandstaff</u>'s analysis "can be applied only to equally extreme factual situations" as when city supervisors deny wrongdoing has occurred after "the entire night shift of the city police force converged and proceeded to direct hails of gunfire at anything that moved . . . [and an] innocent rancher was killed." <u>Coon v. Ledbetter</u>, 780 F.2d 1158, 1161 (5th Cir. 1986). The shooting of Garcia by an individual deputy, like the shooting of a suspect who was fleeing police pursuit in <u>Snyder v. Trepagnier</u>, 142 F.3d 791, 798 (5th Cir. 1998), "hardly rises to the level of the 'extraordinary factual circumstances' presented in <u>Grandstaff</u>-- particularly given the absence of evidence suggesting a culture of recklessness in [Harris County]." <u>Snyder</u>, 142 F.3d at 798.

training was inadequate.  *See* <u>Benavides v. County of Wilson</u>, 955 F.2d 968, 972-73 (5th Cir. 1992) ("[Plaintiff] has produced no evidence suggesting that the deputies received less than the basic medical training required by Texas law.  [Plaintiff] must show, therefore, that this legal minimum of training was inadequate to enable the deputies to deal with 'usual and recurring situations' faced by jailers and peace officers").[8]  Specifically, Plaintiffs produce no evidence that deputies were not properly trained in the requisite tactical skills and legal aspects of using deadly force, nor do they present any evidence that the County has a custom of failing to discipline and investigate claims of excessive force.  Furthermore, Plaintiffs' argument suffers from a lack of causation. As in <u>Pineda</u>, "There is no competent summary judgment evidence of any causal relationship between any shortcoming of the officers' training regarding [the use of deadly force] and the injury complained of.  Viewing the evidence in the light most favorable to the plaintiffs, the record fails to put at issue whether additional training would have avoided the accident."  <u>Pineda</u>, 291 F.3d at 334.  In sum, considering "the heavy burden that a plaintiff must bear in establishing municipal culpability and causation," <u>Piotrowski</u>, 237 F.3d at 583, Plaintiffs have failed to raise a fact

---

[8] In fact, Deputy Long, according to uncontroverted summary judgment evidence, had completed three times the amount of continuing law enforcement training that is required by law and had taken additional courses involving the use of deadly force.  *See* Document Nos. 49 ¶ 21; 62 ¶ 6.

issue that any of the alleged policies they cite furnishes a basis for finding that the County maintained a widespread custom or policy that caused Garcia's injuries.  As such, the County's Motion for Summary Judgment will be granted.

C.    Centex Homes's Motions for Summary Judgment

Plaintiffs also contend that Centex Homes was negligent in failing to train, supervise, or instruct Long and therefore is liable in *respondeat superior* for Long's actions.[9]  Document No. 28 ¶¶ 10, 57-59.  Under Texas law, the elements of a negligence claim are (1) a legal duty on the part of the defendant; (2) breach of that duty; and (3) damages proximately resulting from that breach.  Sport Supply Group, Inc. v. Columbia Cas. Co., 335 F.3d 453, 466 (5th Cir. 2003).  *Respondeat superior* imposes liability on the employer when the negligence of its employee, acting in the scope of his employment, is the proximate cause of another's injury.  DeWitt v. Harris County, 904 S.W.2d 650, 654 (Tex. 1995); *see* St.

---

[9] In their Response to Centex's Motion for Summary Judgment (Document No. 50), Plaintiffs for the first time raise a private § 1983 claim against Centex Homes. Id. at 10.  However, Plaintiff's Amended Complaint raises only negligence claims against Centex, and Plaintiffs have not pleaded specific facts to state a claim for an alleged private civil rights violation by Centex.  *See* Cinel v. Connick, 15 F.3d 1338, 1343-44 (5th Cir. 1994) (finding that complaint failed to allege facts in support of appellant's private § 1983 claim); *see also* Wood Arts Golf, Inc. v. Callaway Golf Co., 196 F. Supp. 2d 467, 469 n.1 (S.D. Tex. 2002) (a plaintiff "may not assert new claims in a response to a motion for summary judgment").

Joseph Hosp. v. Wolff, 94 S.W.3d 513, 542 (Tex. 2002) ("[T]he right to control remains the 'supreme test' for whether the master-servant relationship exists and thus whether the rule of vicarious liability applies") (quoting Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins, 926 S.W.2d 287, 290 (Tex. 1996)).  For purposes of determining whether vicarious liability applies when an off-duty officer works for a private employer, the court asks "in what capacity was the officer acting at the time he committed the acts for which the complaint is made?"  Cherqui v. Westheimer Street Festival Corp., 116 S.W.3d 337, 344 (Tex.App.-- Houston [14 Dist.] 2003, no writ) (quoting Blackwell v. Harris County, 909 S.W.2d 135, 139 (Tex.App.--Houston [14th Dist.] 1995, writ denied)).  If an off-duty officer observes the commission of a crime, he immediately becomes an on-duty officer as a matter of law when determining the vicarious liability of the private employer.  Id. at 344; see also Holland v. City of Houston, 41 F. Supp. 2d 678, 700 (S.D. Tex. 1999).

The uncontroverted summary judgment evidence establishes that Long shot Garcia after: (1) Long suspected the commission of a theft in progress in the nighttime at 2 A.M.; (2) Long, in full Sheriff's uniform, decided to investigate the suspected theft in progress; (3) Long announced to the dispatcher that he was proceeding to investigate a possible theft in progress; and

(4) Long approached the vehicle to investigate a suspected theft.[10]
Under Texas law, when Deputy Long suspected a crime was in
progress, he became an on-duty peace officer subject to the control
of the Harris County Sheriff's Department.  As such, Centex Homes
as a matter of law is not vicariously liable for Long's on-duty
shooting of Garcia.   Furthermore, Plaintiffs' negligence claim
against Centex also fails because Long's conduct as an on-duty
peace officer was the proximate cause of Garcia's injuries, not
Centex's alleged negligence in training Long.  *See, e.g.,* <u>Leake v.
Half Price Books, Records, Magazines, Inc.</u>, 918 S.W.2d 559, 564
(Tex.App.--Dallas 1996, no writ) (finding that a private employer's
alleged negligent retention of a security officer could not be the
proximate cause of the decedent's injuries once the officer became
an on-duty employee); <u>Dieter v. Baker Service Tools</u>, 739 S.W.2d
405,    408    (Tex.App.--Corpus   Christi   1987,    writ   denied).
Accordingly, Centex Homes is entitled to summary judgment against
Plaintiffs.

D.   <u>Intentional Infliction of Emotional Distress</u>

     Plaintiffs also plead intentional infliction of emotional
distress, presumably against all Defendants, but appear to have

---

[10] Plaintiffs' expert witness Clark also concedes, "The record
is clear that the incident in question was nothing more than the
suspected theft in progress of residential roofing shingles."
Document No. 35 ex. 2 at 4.

abandoned the claim.   In any event, Plaintiffs have failed to present any evidence to raise a fact issue on the essential elements of this claim.   *See* <u>Brennan v. Mercedes Benz USA</u>, 388 F.3d 133, 136 (5th Cir. 2004).

## IV.   <u>Order</u>

For the foregoing reasons, it is

ORDERED that all claims by the putative Estate of Rodolfo Garcia Gonzalez, Deceased, against all Defendants, are DISMISSED; Defendant Deputy Long's Motion for Summary Judgment (Document No. 49) is GRANTED as to Plaintiff Aurora Gonzalez Garcia and her claims against Defendant Long are DISMISSED with prejudice, and Defendant Long's motion is otherwise DENIED; Defendant Harris County's Motion for Summary Judgment (Document No. 49) is GRANTED, and Plaintiffs Arturo Garcia and Aurora Gonzalez de Garcia's claims against Defendant Harris County are DISMISSED with prejudice; and Defendant Centex Homes's Traditional Motion for Take-Nothing Summary Judgment (Document No. 47) and Supplemental Motion for Take-Nothing Summary Judgment (Document No. 48) are GRANTED, and Plaintiffs Arturo Garcia's and Aurora Gonzalez de Garcia's claims against Defendant Centex Homes are DISMISSED with prejudice.

Plaintiff Arturo Garcia's § 1983 excessive force claim and state-law assault and battery claim under the Texas wrongful death statute against Defendant Deputy Zachary Long remain for trial.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas on this 28th day of December, 2005.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE